IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID No. 1610011768 |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| ALAN DEWITT | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Submitted: April 28, 2017
Decided:  May 18, 2017

On this 18th day of May 2017, having considered Defendant Alan Dewitt's (hereinafter "Mr. Dewitt's") motion to suppress, and the State's response, it appears that:

1. The State charged Mr. Dewitt with drug dealing, aggravated possession of marijuana, possession of drug paraphernalia, and driving a vehicle under the influence of drugs.  In this motion, Mr. Dewitt seeks to suppress evidence seized from his vehicle during a search following a traffic stop and his arrest for driving under the influence.

2. The facts recited are those as found by the Court after the suppression hearing of April 28, 2017.  Shortly before midnight on October 18, 2016, Trooper Nefosky of the Delaware State Police was on routine patrol when he observed Mr. Dewitt's vehicle change lanes without signaling properly. Trooper Nefosky then initiated a traffic stop.  He approached Mr. Dewitt's vehicle and directed him to roll down his window so that he could speak with him.  At that point, he smelled fresh marijuana in Mr. Dewitt's vehicle.  He also observed Mr. Dewitt's eyes to be

bloodshot and his speech to be slow. Trooper Nefosky then returned to his patrol vehicle to radio for another unit to assist him in a search of the car. He then returned to Mr. Dewitt's vehicle to direct Mr. Dewitt to perform some verbal sobriety tests to determine if he was impaired. He passed those tests.

3. Other officers soon arrived and searched the vehicle's passenger compartment. In that search, the police found a small pipe with black residue in the driver's side door and then searched no further. When confronted with the pipe, Mr. Dewitt admitted to smoking marijuana approximately six or seven hours earlier. At that point, the trooper told Mr. Dewitt that if he was found not to be under the influence of marijuana after field sobriety tests, he would be charged with a civil violation and would then be free to go. After administering the field sobriety tests, the trooper arrested Mr. Dewitt for driving under the influence. Officers then resumed the search of Mr. Dewitt's vehicle and took an inventory of its contents. In the trunk, the officers discovered currency and other drug related evidence.

4. Mr. Dewitt contends that Trooper Nefosky lacked both probable cause to search his vehicle and to separately arrest him for driving under the influence. The State counters that because the odor of marijuana was detected in the vehicle, Trooper Nefosky had probable cause to search the vehicle. Additionally, the State contends that because of Trooper Nefosky's observations and Mr. Dewitt's performance on the field sobriety tests, the State had probable cause to arrest him for driving under the influence, thus permitting the legal search and inventory of his vehicle.

2

5. Probable cause is evaluated based on the totality of the circumstances.[1] The burden is on the State to justify a warrantless search or seizure.[2] In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.[3] The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[4]

6. An officer performing a lawful traffic stop may not deviate into the investigation of other offenses, unless the officer observes independent facts sufficient to justify an additional intrusion.[5] When an officer detects an odor of contraband coming from a vehicle, an officer has probable cause to believe that the vehicle contains evidence of criminal activity, and a warrantless search is proper.[6] The odor of "marijuana alone, if articulable and particularized, may establish . . . probable cause for officers to believe that contraband is present in the area from which the scent emanates."[7] Pursuant to the vehicle exception to the warrant

---

[1] *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).

[2] *State v. Holmes,* 2015 WL 5168374, at *3 (Del. Super. Ct. Sept. 3, 2015)(citation admitted) *aff'd* 149 A.3d 227 (Del. 2016).

[3] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Ct. Nov. 28, 2016).

[4] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. Ct. June 22, 2015).

[5] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[6] *Chisholm v. State*, 988 A.2d 937 (Table) 2010 WL 424241 at *2 (Del. Feb. 4, 2010) (holding that officer had probable cause, having smelled strong odor of marijuana while approaching passenger side of vehicle and observed individual behaving suspiciously); *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (recognizing that "[t]he strong odor of PCP establishes probable cause to believe the vehicle occupied by [defendant] contained evidence of criminal activity. Thus, the warrantless search of the [vehicle] was proper."); *Jenkins v. State,* 970 A.2d 154, 158–59 (Del. 2009) (holding that defendant's suspicious behavior and the strong odor of marijuana established probable cause to search defendant's car).

[7] *Fowler v. State*, 148 A.3d 1170 (Table) 2016 WL 5853434 at *2 n. 5 (Del. Sep. 29, 2016) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)); *see also United States v. Simmons*, 2007 WL 3122169, at *3 (3d Cir. 2007).

requirement, such probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[8]

7. Here, the parties do not dispute the lawfulness of the initial traffic stop for failing to signal a lane change. Furthermore, the Court finds that Trooper Nefosky's testimony that he detected a fresh marijuana odor in Mr. Dewitt's vehicle to be credible. This odor, when combined with the driver's slow speech and blood shot eyes, provided probable cause to search Mr. Dewitt's vehicle pursuant to the vehicle exception, which included the trunk of the car.[9]

8. In this case, however, the Court's focus turns from the vehicle exception to the warrant requirement to the evaluation of a driving under the influence investigation. While the search of the vehicle was based on what the Court finds to be probable cause for the officer to believe contraband was in the car, Trooper Nefosky voluntarily terminated the search through his actions and statements. Namely, he told Mr. Dewitt, after finding the pipe, that if he passed the field sobriety tests, he would be free to go with only a civil violation. By terminating the search of the car and making this statement, Trooper Nefosky turned his investigation in a different direction. At that point, the further detention and later inventory search would require independent justification. This follows directly from the premise that further prolonging a "road side detention in order to investigate other possible crimes, [constitutes] a second detention."[10] That second

---

[8] *Henry v. State*, 588 A.2d 1142 (Table) 1991 WL 12094 at \*4 (Del. Jan. 15, 1991) (quoting *US v. Ross*, 456 U.S. 798, 825 (1982)).

[9] *Henry*, 588 A.2d at \*4.

[10] *State v. Chandler*, 132 A.3d 133, 143 (Del. Super. Ct. Apr. 2, 2015), *as corrected* (Apr. 14, 2015); *see Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (holding that "[t]he scope of the detention must be carefully tailored to its underlying justification.") (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)).

detention must be further justified by facts that independently warrant additional investigation.[11]

9. Notwithstanding the need for a separate analysis, the Court cannot ignore all the facts available to the trooper prior to the changed focus of the investigation. These cumulative facts must be appropriately considered when evaluating the *totality* of the circumstances.

10. Given the presentation of the evidence at the hearing, the Court affords no weight in its analysis of probable cause, to the results of the field sobriety tests in this case. Apart from the results of the field sobriety tests, Delaware law prohibits citizens from operating a vehicle when their blood contains "*any amount* of an illicit or recreational drug."[12] Mr. Dewitt's admission to having smoked marijuana mere hours beforehand is particularly supportive of a finding of probable cause. Under the totality of the circumstances, the Court finds that Trooper Nefosky had probable cause to arrest Mr. Dewitt for driving under the influence of marijuana based upon: (1) the strong odor of marijuana detected in his vehicle; (2) the discovery of a pipe with residue in his driver's side door; (3) his admission to having smoked marijuana earlier that day; (4) his glassy, blood shot eyes; and (5) his slowed speech.[13]

11. Given this legal arrest for driving under the influence, the search of the trunk for the purpose of conducting an inventory constituted a valid independent

---

[11] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[12] 21 *Del. C.* § 4177(a)(6).

[13] *Bease v. State*, 884 A.2d 495 (Del. 2005) (finding probable cause based on odor of contraband, bloodshot eyes, altered speech, and admission to prior consumption of intoxicant); *Jenkins v. State*, 970 A.2d 154, 158–159 (Del. 2009) (holding police had probable cause to arrest defendant based on suspicious conduct of defendant and "the strong marijuana odor"); *see State v. Peabody*, 1975 WL 168708 (Del. Super. Ct. Feb. 19, 1975).

source for the discovery of contraband in Mr. Dewitt's trunk.[14] Namely, the search of the trunk was necessary and justified as part of an inventory performed pursuant to Mr. Dewitt's arrest for driving under the influence, and did not violate his rights.[15]

For the foregoing reasons, Mr. Dewitt's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**


/s/Jeffrey J Clark
Judge

---

[14] *State v. Bradley*, 2011 WL 1459177, at *14 (Del. Super. Apr. 13, 2011), *aff'd* 51 A.3d 423 (Del. 2012) (*citing U.S. v. Burton*, 288 F.3d 91, 100–01 (3d Cir. 2002) (applying the independent source doctrine in the inverse of the situation at hand by declining to suppress evidence from the search of the trunk of a vehicle because, even assuming defendant's arrest was unlawful, police had a lawful independent source under the automobile exception: they had probable cause to conclude the vehicle was involved in an illegality)).

[15] *State v. Gwinn*, 301 A.2d 291, 293 (Del. 1972) (The overwhelming weight of authority supports the reasonableness and the lawfulness of [an] inventory search, and the admissibility of any evidence of crime that comes into the 'plain view' of the inspecting officer in the course thereof, whether or not related to the offense for which the arrest has been made."); *State v. Stallings*, 60 A.3d 1119, 1127–28 (Del. Super. Dec. 24, 2012) (recognizing that "[t]owing a vehicle is permitted when the operator is arrested . . . . [o]nce that decision was made, the inventory became necessary.").